UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 09-413-GWU

KATHLEEN HERRON, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

Kathleen Herron brought this action to obtain judicial review of an unfavorable administrative decision on her application for Supplemental Security Income. The case is before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of

        Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.    At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.    If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th

3

Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2

and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient,

5

if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The Administrative Law Judge (ALJ) concluded that Herron, a 48-year-old woman with a "limited" education, suffered from irritable bowel syndrome, being status post hiatal hernia repair in the remote past, depression and left shoulder pain. (Tr. 18). Despite the plaintiff's problems, her impairments were found not to be "severe." (Tr. 19). Therefore, the claimant could not be considered totally disabled. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The ALJ properly determined that Herron did not suffer from a "severe" physical impairment. Dr. Daniel Stewart examined the plaintiff and noted a diagnostic impression of tobacco abuse disorder, left shoulder pain and a history of unknown surgeries as an infant. (Tr. 365). Based on the physical examination,

history and medical documentation, Dr. Stewart opined that the claimant did not suffer from any functional restrictions which would preclude her from engaging in the lifting, carrying, sitting, standing, moving about, handling objects, hearing, seeing and traveling required for work activity. (Id.). Despite her history of birth defects and multiple childhood surgeries, these problems had not prevented her from working in the past and the physician did not believe these problems currently inhibited her ability to engage in work activity. (Id.). Therefore, this report strongly supports the administrative decision.

Dr. Humildad Anzures reviewed the record in July of 2007 and opined that it did not reveal the existence of a "severe" physical impairment. (Tr. 368). Therefore, Dr. Anzures also supports the administrative decision.

Dr. Sharon Colton treated Herron for shoulder pain, irritable bowel syndrome and general health issues. (Tr. 297-304). The only activity restriction indicated by the physician was a need to quit smoking. (Tr. 301). Functional limitations were also not identified by such treating and examining sources as the staff at Appalachian Regional Healthcare (Tr. 200-292), Dr. Abdulkader Dahhan (Tr. 293-296), the staff at the Clover Fork Clinic (Tr. 332-362), the staff at Mary Breckinridge Healthcare (Tr. 369-533), and the Cincinnati Children's Hospital (Tr. 548-554). Therefore, these reports also do not support the existence of a "severe" physical impairment.

Herron asserts that the ALJ erred in failing to find that other impairments from which she suffers, including Wolff-Parkinson-White syndrome,[1] nerve entrapment in left shoulder, anxiety and "drawing" from surgeries were "severe" impairments. The mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988). In the present action, no treating or examining physician has imposed specific functional limitations relating to these conditions. Therefore, the court finds no error.

The ALJ also dealt properly with the evidence of record relating to Herron's mental condition. The plaintiff sought treatment for her mental problems at Kentucky River Comprehensive Care in November of 2008. A major depressive disorder, psychosis and anxiety were diagnosed. (Tr. 547). The claimant's Global Assessment of Functioning (GAF) was rated at 55. (Id.). Such a GAF suggests the existence of "moderate" psychological symptoms according to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34. "Moderate" mental problems would not appear sufficient to meet the requirements of § 12.04 of the Listing of Impairments which requires

---

[1] Wolff-Parkinson-White (WPW) is a syndrome of pre-excitation of the ventricles of the heart due to an accessory pathway known as the bundle of Kent. This accessory pathway is an abnormal electrical communication from the atria to the ventricles. WPW is a type of atrioventricular reentrant tachycardia. Wikipedia, the Free Encyclopedia, http://en.wikipedia.org (viewed August 17, 2010).

"marked" limitation in at least two areas. Even if the ALJ erred in failing to find the existence of a "severe" mental impairment, the Kentucky River staff did not identify specific mental limitations. (Tr. 534-547). As previously noted, the mere diagnosis of a condition does not prove its severity and its disabling effects must still be shown. Higgs, 880 F.2d at 863. Furthermore, Herron was properly found not to suffer from any physical restrictions. Social Security Ruling 85-15 indicates that when a claimant's only impairment is mental but not of Listing severity, then the individual can only be considered totally disabled if the mental impairment causes a "substantial loss" of ability to handle simple instructions, respond appropriately to supervision, co-workers or usual work situations, and to deal with changes in the routine work setting. The Kentucky River notes do not indicate this level of severity in these specific areas. Since the plaintiff's alleged problems would be no more than "moderate" in severity, a finding of disabled status would not be appropriate. Therefore, the court finds no error.

Herron argues that the ALJ did not properly evaluate her subjective pain complaints. Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Herron was properly found not to be suffering from a "severe" impairment and, so, arguably does not meet the first prong. However, even if she could be found to have satisfied the first prong of the so-called <u>Duncan</u> test, the claimant does not meet either of the alternative second prongs. As noted by the ALJ, the plaintiff had a serious hiatal hernia at birth and a hole in her diaphragm which was repaired during childhood and the medical record does not reveal evidence that serious functional restrictions persisted after the surgical repair. (Tr. 20). Dr. Stewart found no gross physical abnormalities upon physical examination. (Tr. 364). The heart had a regular rate and rhythm without appreciable murmur, rub or gallop. (Id.). The extremities were free of cyanosis, clubbing and edema. (Id.). Deep tendon reflexes and muscle strength were intact for all extremities. (Id.). Range of motion was normal for all extremities. (Id.). Treatment notes from Clover Fork note that she experienced occasional problems with her shoulder which required injection but no specific functional restrictions were imposed. (Tr. 335). Her gait and station were found to be normal and no misalignment, asymmetry, crepitation, defects, tenderness, masses, effusion, decreased range of motion, instability, or abnormal strength were reported with regard to her musculoskeletal system. (Tr. 336). Reflexes were intact. (Id.). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.

As noted by Herron, the ALJ also indicated that her reliance upon only over-the-counter medication was a ground to find that her complaints of disabling pain lacked credibility. (Tr. 20). The plaintiff asserts that she could not afford other treatment and the ALJ showed bias against the desperately poor. However, the ALJ also noted the many normal findings found on physical examination made by the treating and examining sources. (Id.). The claimant has not indicated exactly what prescribed treatment she was unable to utilize due to a lack of funds. Therefore, the court must reject the plaintiff's argument.

The ALJ also cited her continued cigarette smoking habit as a reason to reject her credibility. (Id.). Herron asserts that the ALJ was biased against her for this and failed to appreciate the addictive nature of the nicotine in tobacco products. Nevertheless, the Sixth Circuit of Appeals has indicated that the administration is allowed to consider the financial and health effects of the use of tobacco products in evaluating disability claims. <u>Sias v. Secretary of Health and Human Services</u>, 861 F.2d 475, 480 (6th Cir. 1988). In <u>Sias</u>, the court specifically noted that the funds used by the claimant to pay for cigarettes could have been used to pay for recommended medical care and his choice to buy tobacco instead was a legitimate factor to consider in assessing the credibility of his pain complaints. <u>Sias</u>, 861 F.2d at 480. To the extent that the claimant argues that this issue should be seen as one of a drug addiction to nicotine, the court notes that Public Law 104-121 precludes a finding of disabled status when drug or alcohol addiction is a material factor

contributing to disability. Therefore, the ALJ would appear to have properly evaluated Herron's pain complaints.

The undersigned concludes that the administrative decision should be affirmed. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 20th day of August, 2010.

Signed By:
*G. Wix Unthank*
**United States Senior Judge**